FILED

2005 May-03  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JACQUELINE PEARSON, | ) | |
| PLAINTIFF, | ) | |
| V. | ) | **2:03-CV-2480-JHH** |
| CITY OF BESSEMER, ALABAMA, | ) | |
| and CITY OF BESSEMER POLICE | | |
| DEPARTMENT, an agency of the | ) | |
| City of Bessemer, | | |
| | ) | |
| DEFENDANT. | | |

## MEMORANDUM OF DECISION AND ORDER

The court has before it the January 19, 2005 motion for summary judgment of defendant City of Bessemer, Alabama.  Pursuant to the court's January 19, 2005 order, the motion was deemed submitted, without oral argument, on February 16, 2005.

## I. Procedural History

Plaintiff Jacqueline Pearson, a white female police officer employed by defendant, commenced this action on September 8, 2003 by filing a complaint in this court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983 and the Civil Rights Act of 1991.  Plaintiff has

sued the City of Bessemer, Alabama and City of Bessemer Police Department.[1]

Plaintiff contends that defendant's conduct constitutes (1) sex discrimination and

(2) race discrimination.  Defendant's January 19, 2005 motion for summary

judgment asserts <u>inter alia</u> that plaintiff's claims are time barred and in the

alternative that plaintiff has failed to come forward with sufficient evidence to

withstand its motion for summary judgment on the merits.

Both parties have filed briefs and submitted evidence in support of their

respective positions.  Defendant submitted evidence[2] in support of its own motion

for summary judgment and filed a supporting brief on January 19, 2005.  On

February 9, 2005, plaintiff filed evidence[3] in opposition to Defendant's motion for

summary judgment.  Also on February 9, 2005, plaintiff filed a brief in opposition

---

[1] The City of Bessemer Police Department is not a suable entity and is hereby **DISMISSED** with prejudice.  <u>See</u> <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 (11th Cir. 1992); <u>Shelby v. City of Atlanta</u>, 578 F.Supp. 1368, 1370 (D.C. Ga. 1984).

[2] Defendant submitted: complaint; Notice of Charge of Discrimination; EEOC Determination; deposition excerpts from Jacqueline Pearson; affidavit of Danny W. Johnson; deposition of Andy Bellanca; deposition of Frank Easterling; deposition of Danny W. Johnson;

[3] Plaintiff submitted: deposition of Jacquiline Pearson; deposition of Joe Frank Easterling; letter from Chief Ray Adams; letter from Director Ron Holt; affidavit of Jacqueline Pearon; deposition of Larry Woods; affidavit of Richard Mack Cheatwood; affidavit of Wendy Perales; EEOC charge; deposition of Don Cartier; deposition of Terri Corder; affidavit of Don Cartier; letter from Pearson; Jefferson County Certificate of Eligibles; affidavit of Alethea White; deposition of Anthony Bellanca; deposition of Danny Johnson; Police Sergeant Register of final exam scores; memorandum assigning Jacqueline Pearson to motor scouts; notice of right to sue, complaint.

to defendant's motion for summary judgment.  On February 14, 2005, defendant

filed a reply brief.[4]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrate

the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving

party to go beyond the pleadings and by his own affidavits, or by the depositions,

answers to interrogatories, and admissions of file, designate specific facts showing

that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are

---

[4] Defendant attached the following to the brief: affidavit of Captain Danny Johnson and the Rules and Regulations of the Personnel Board of Jefferson County.

irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy

4

its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when

responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Evaluation of Plaintiff's Claims

In this action, plaintiff is pursuing gender and race related claims under Title VII.[5]  Plaintiff claims that defendant subjected her to disparate treatment based on her gender (female) and race (white) and a hostile work environment on the same grounds.  She filed her EEOC charge October 10, 2001.[6]  Thus, events occurring prior to April 13, 2001 cannot be redressed under her Title VII claims unless an exception to the statute of limitations applies.  She filed this action September 8, 2003.  Thus, events occurring prior to September 8, 2001 cannot be redressed under her § 1983 claim.  As events occurring prior to April 13, 2001 and September 8, 2001 may be relevant to her two theories of recovery, the court is including herein factual background that dates from her initial interview for employment with defendant in 1993.  The claims will be discussed hereafter

---

[5]  As is discussed below, plaintiff is also pursuing either a race claim under 42 U.S.C. § 1981 through 42 U.S.C. § 1983 or a gender claim through 42 U.S.C. § 1983.

[6]  On September 30, 2002, the EEOC made a final determination.  Plaintiff received a Notice of "Right to Sue" from the United States Department of Justice on June 9, 2003.  This determination stated that there was reasonable cause to believe that discrimination did occur with respect to the shower/locker room facilities, however, no finding was made regarding plaintiff's remaining allegations.  (See EEOC Determination.)

separately.

*1.  Hostile Environment*

Plaintiff alleges that the conditions of her employment, both from the

standpoint of her gender, as well as her race, created a hostile working

environment.  These two claims will be discussed separately.

Plaintiff argues that the following events as a whole constitute a sexually

hostile work environment:

- On December 18, 1993, during plaintiff's initial job interview, Sergeant Easterling, who plaintiff viewed as "very pro-female," informed plaintiff that Chief Adams did not normally let him hire women.
- The "common practice, belief, and knowledge [was] that female officers who slept with their male supervisors received preferential treatment."
- Numerous officers at various times made comments implying that they did not believe women were appropriate for law enforcement.
- Lieutenant Danny Johnson at various times made derogatory remarks about plaintiff's weight, body odor and gender; including describing plaintiff on a motorcycle as a "hog on a hog," saying that he "wish[ed he] could run that bitch off," and saying that he "knew that bitch couldn't handle it" with respect to plaintiff not making the motor scouts unit.  These statements were not made directly to plaintiff.
- In 1998, Sergeant Nunnally commented that "there weren't going to be any damn women on his motor scouts."
- In February 1999, Lieutenant Vasser indicated that he believed female officers belonged at home.
- After plaintiff filed her EEOC charge, members of the unit stopped talking to her and held meetings without notifying her.
- In 2001, Captain Bellanca told plaintiff "at least I don't have to worry about you being a ninety pound weakling," and asked plaintiff if she was going to sue if she was not promoted to sergeant.

7

(See Pl.'s Opp. Brief Summ. J. at 25-29.)

A charge of discrimination must be filed within one hundred and eighty days after an alleged unlawful employment practice occurs.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); see also Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001) ("[i]t is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred.").  Plaintiff filed her charge of discrimination October 10, 2001; therefore, any incidents after April 13, 2001 occurred within the 180 day filing period.  Defendant argues that conduct occurring before April 13, 2001 is time barred, and therefore, plaintiff's hostile environment claim based on sexual harassment would be limited to Captain Bellanca's statements: (1) "at least I don't have to worry about you being a ninety pound weakling," and (2) asking plaintiff if she was going to sue if she was not promoted to sergeant.  (See Pl.'s Brief in Opposition to Sum. J. at 22-23; Def.'s Reply Brief at 8.)

The court has been instructed to strictly adhere to the 180 day requirement, and as such, any claims not complying with the requirement are time barred and due to be dismissed for failure to exhaust administrative remedies.  See Brewer v. Alabama, 111 F.Supp.2d 1197, 1204 (M.D. Ala. 2000).  In evaluating timeliness,

claims based upon "discrete acts" and claims based upon a "hostile environment" are treated differently. "Discrete discriminatory acts [such as termination, failure to promote, denial of transfer or refusal to hire] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Shields v. Fort James Corp., 305 F.3d 1280, 1281 (11th Cir. 2002) (quoting Morgan, 536 U.S. at 113). Such discrete acts occur on the day that it happened and each incident "constitutes a separate actionable unlawful employment practice." Id. Hence, plaintiff's claim based on the failure to promote on May 31, 2001 is timely as it occurred within the 180 days of the EEOC charge filed on October 10, 2001.

On the other hand, if the discrimination is not a discrete act, a plaintiff may be exempted from the strict time requirements of Title VII when the "last occurrence of an instance of that practice" occurred within the 180 day window. See Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792 (11th Cir. 1992). Generally speaking, hostile environment claims are "comprised of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 117; Geer v. Marco Warehousing, Inc., 179 F.Supp.2d 1332 (M.D. Ala. 2001) ("[a] hostile work environment claim is the quintessential continuing violation since it finds its basis in an ongoing pattern of offensive conduct."). Thus, a hostile work environment claim "must be reviewed in its entirety, so long as one

of the events comprising it fell within the statute of limitations." See Shields, 305

F.3d at 1281-82 (quoting Morgan, 536 U.S. at 113).[7]

Defendant argues that there is not a per se rule that hostile environments are

continuing violations, and therefore, plaintiff's hostile environment claim based

on racial and sexual discrimination is not saved by the continuing violation

doctrine.  Defendant points the court to a three factor test developed by the Fifth

Circuit in Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971 (5th Cir. 1983) to

determine if an alleged discriminatory act is a continuing violation:

> The first [factor] is subject matter. Do the alleged acts involve the
> same type of discrimination, tending to connect them in a continuing
> violation? The second [factor] is frequency. Are the alleged acts
> recurring (e.g., a biweekly paycheck) or more in the nature of an
> isolated work assignment or employment decision? The third factor,
> perhaps of most importance, is degree of permanence. Does the act
> have the degree of permanence which should trigger an employee's
> awareness of and duty to assert his or her rights, or which should
> indicate to the employee that the continued existence of the adverse
> consequences of the act is to be expected without being dependent on
> a continuing intent to discriminate?

Berry, 715 F.2d at 981 (5th Cir. 1983).  This is a "fact-specific inquiry ... which

_____

   [7]  The Eleventh Circuit stated that Morgan "essentially rejected the 'continuing violation
doctrine' and simplified the law by allowing courts to view allegations of hostile work
environment as 'a single unlawful employment practice. [citation in original]  Put simply if the
smallest portion of that 'practice' occurred within the limitations time period, then the court
should consider it as a whole."  Shields, 305 F.3d at 1282.

cannot be easily reduced to a formula.  Id. at 981-82.[8]  This three factor analysis

seeks to prevent a plaintiff from circumventing the 180 day time limitation by

merely characterizing a completed act of discrimination as a continuing violation.

See Del. State College v. Ricks, 449 U.S. 250, 257 (1980).

Defendant asserts that each of the activities allegedly occurring to plaintiff

within 180 days of the charge were singular, distinct events.  First, the conduct

was mostly in the form of comments.  Next, although the conduct is recurring in

the sense that similar comments have been made throughout plaintiff's

employment by several different individuals, the evidence only supports the

contention that the comments occurred sporadically with several years between

some instances.  This factor does not lend itself to a clear conclusion.  Lastly, and

"perhaps the most important factor," is the degree of permanence.  The court is

well aware of the importance of prompt filing and the dangers of allowing "an

employee to buttress a weak claim of sexual harassment by referencing untimely

---

[8] There may be some question as to the authority of the Berry test in this context.
District courts in the Middle District of Alabama have been using the three part test to determine
continuing violations; however, those decisions note that "[t]he Eleventh Circuit adopted the
Berry test in Part C of its opinion in Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 800 (11th
Cir. 1988) ("Roberts I").  However, as ... noted in Malone v. K-Mart Corp., 51 F.Supp.2d 1287,
1301 n.3 (M.D. Ala. 1999), the Eleventh Circuit reconsidered Roberts I sua sponte and withdrew
Part C of Roberts I in its entirety.  Roberts v. Gadsden Mem'l Hosp., 850 F.2d 1549, 1551 (11th
Cir. 1988).  The court, thus, refrains from stating that the Eleventh Circuit has adopted the Berry
analysis." Blaylock v. Dale County Bd. of Educ., 84 F.Supp.2d 1291 n.16 (M.D. Ala. 1999).

facts that bear the most tenuous of relations to timely facts." <u>Geer</u>, 179 F.Supp.2d at 1339. <u>Accord</u> <u>Lawton State Mut. Life Assurance Co. of Am.</u>, 101 F.3d 218 (1st Cir. 1996) ("common sense teaches that a plaintiff cannot resuscitate time barred acts, said to be discriminatory, by the simply expedient of linking them to a non-identical, non-discriminatory, non time-barred act."). Additionally, when the events occurring within the 180 day window do not materially add to the condition, but are simply "just more of the same," the earlier incidents usually should put the plaintiff on notice. <u>See</u> <u>DeClue v. Cent. Ill. Light Co.</u>, 223 F.3d 434, 436 (7th Cir. 2000) (Posner, J.). At the same time, the court is not entirely convinced that this situation is one where plaintiff was able to appreciate that she may have been discriminated against until she lived through a series of acts and was thereby able to perceive an overall discriminatory pattern. This case presents a close question whether the three part <u>Berry</u> test is satisfied. While the court is inclined to hold that the incidents before April 13, 2001 should not be considered, the court need not procedurally bar those events because even if such events are applicable under the continuing violation doctrine, defendant would still be entitled to summary judgment on the hostile environment claims on the merits.

Assuming <u>arguendo</u> that conduct dating back to plaintiff's hiring can be the gravamen of her hostile environment claim, the court must consider the conduct

cumulatively and in context under the framework laid out in <u>Mendoza v. Borden, Inc.,</u> 195 F.3d 1238 (11th Cir. 1999) (<u>en</u> <u>banc</u>).  A claim for hostile work environment based on sexual harassment has five elements: (1) the employee belongs to a protected group; (2) the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature, (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable. <u>Mendoza</u>, 195 F.3d at 1245.[9]  "The paradigm of sexual harassment as federally prohibited employment discrimination occurs when an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands."  <u>Mendoza</u>, 195 F.3d at 1245 (citing <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998)).

This case does not involve such an explicit violation.  As such, plaintiff must prove that there were more than isolated incidents of simple teasing to

---

[9]  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 n. 10 (2002); <u>see</u> <u>also</u> <u>Baker v. Alabama Dept. of Public Safety</u>, 296 F.Supp.2d 1299, 1309 (M.D. Ala. 2003).

establish a discriminatory change in plaintiff's terms and conditions of

employment.  See Faragher v. City of Boca Raton, 524 U.S. 775 (1998) ("conduct

must be extreme to amount to a change in terms and conditions of employment");

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986).  An actionable hostile

environment is one that is "permeated with discriminatory intimidation, ridicule

and insult that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment."  Harris v.

Forklift Sys., Inc., 510 U.S. 17 (1993).  Relevant factors to determine if a hostile

environment was present include: "(1) the frequency of the conduct; (2) the

severity of the conduct; (3) whether it is physically threatening or humiliating, or a

mere offensive utterance; and (4) whether the conduct unreasonably interferes

with an employee's work performance."  Allen v. Tyson Foods, 121 F.3d 642, 647

(11th Cir. 1997) (citing and applying Harris, 510 U.S. at 23).  At the summary

judgment stage, plaintiff does not have to establish that application of the Harris

factors results in her prevailing on the merits, however, she does have to come

forth with substantial evidence showing that a reasonable jury could potentially

find for her at trial under this framework.

Plaintiff's brief almost exclusively cites discrimination in the form of

chauvinistic comments that women are not suited for police work and references

14

to plaintiff as a "bitch" made to other employees.  The court first looks at the frequency of the comments.  Plaintiff's evidence shows, at best, that the several derogatory remarks have spanned plaintiff's career and were made by several different individuals.  However, the comments were not made on an ongoing basis, as there are several years between some of the occurrences.  Thus, the incidents cannot be characterized as frequent.  As to the severity of the conduct, although the comments about plaintiff over her ten plus years at the department are insensitive, rude and inappropriate, the comments are merely offensive utterances that would not have interfered with the work performance of an objectively reasonable person.  Repetitively referring to plaintiff as a "bitch," coupled with other indicia of serious ongoing gender related harassment, can be the grounds for a hostile environment claim.  On the other hand, stray remarks and the term "bitch," in and of itself, are not enough to objectively create an abusive working environment.  The vast majority of courts which have considered situations similar to plaintiff's have found that sporadic comments over a long period of time are not pervasive or severe enough to alter terms and conditions of employment.  This is particularly true in light of the fact that almost all of the comments were not made directly to plaintiff.  Instead, plaintiff pieces her claim together by the accounts of various other employees.  Moreover, several of the comments which plaintiff

15

complains are not necessarily related to gender.  See, e.g., Galloway v. General

Motors Serv. Parts Operations, 78 F.3d 1164, 1167-68 (7th Cir. 1996) (holding

that repeatedly calling the plaintiff a "sick bitch" was insufficient under Harris

because it was not necessarily gender-related); see also Kortan v. Cal. Youth

Auth., 217 F.3d 1104, 1111 (9th Cir.2000) (calling female employees "castrating

bitches" is not a hostile environment); Weigold v. ABC Appliance Co., 2004 WL

1543165, at *7 (6th Cir. 2004) (unpublished opinion) (male and female employees

referring to a female co-worker as a "bitch" not actionable).[10]  And it is highly

relevant that nothing in the record indicates that factors three (physically

threatening) and four (unreasonable interference with work performance) are

implicated.

Plaintiff also advances an argument, based largely on rumor, suggesting that

female officers who had consensual relationships with supervisors were given

preferential treatment.  "Favoritism toward a 'paramour' ... may be unfair, but it

does not discriminate against women or men in violation of Title VII, since both

are disadvantaged for reasons other than their genders."  See Womack v. Runyon,

---

[10]  Plaintiff argues that this case is analogous to Jessen v. Babbit, 202 F.3d 282, (10th Cir. 1999) (unpublished opinion).  Although not binding precedent, Jessen is of little assistance to the court as the Tenth Circuit's analysis centered on "abrasive, hot tempered, intimidating, [and] impliedly violent" overtones which indicated that physical intimidation was due to plaintiff's gender.  Jessen, 202 F.3d at * 3.  The case does not involve any physical conduct.

147 F.3d 1298, 1300 (11th Cir. 1998) (quoting EEOC Policy Guidance on

Employer Liability Under VII for Sexual Favoritism, EEOC Notice No. 915-048

(January 12, 1990)); see also Becerra v. Dalton, 94 F.3d 45 (4th Cir. 1996)

(holding that promoting an individual who was having a sexual relationship with

the selecting officers cannot form the basis of a Title VII claim); DeCintio v.

Westchester County Medical Center, 807 F.2d 304 (2d Cir. 1986) (stating that

"disfavoring [an employee] ... because of the decision-maker's preference for his

paramour" is not actionable under Title VII).[11]  Even when considering the sparse

evidence supported by personal knowledge in conjunction with the negative

comments directed towards female officers, plaintiff merely describes an

uncomfortable, as opposed to a severe and pervasively hostile, working

environment.

Allowing plaintiff's hostile environment claims to go forward would be

dishonest to the longstanding proposition that Title VII is not a federal "civility

code."  See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75 (1998).

Construing the facts in the light most favorable to plaintiff in the totality of the

circumstances, the actions plaintiff complains of, if not time barred, were not

---

[11]  This rationale also negates plaintiff's contention that some women received
promotions and/or favorable job assignments based on their relationships with supervisors.

sufficiently severe or pervasive to alter her terms or conditions of employment.[12]

Plaintiff also claims that she has been subjected to a racially hostile work environment based on the following facts:

- Anthony Warren, a black male, was placed in the detective division despite a low score at the police academy.
- Sherry Moultrie, a black female, was promoted to sergeant without serving time on the street.
- Several employees believe black officers were allowed flexible lunch hours.
- Several employees believe black officers were able to avoid disciplinary actions.

(See Pl.'s Opp. Brief Summ. J. at 32-33.)

Plaintiff's allegations regarding a racially hostile work environment require no more than cursory mention. The court has found plaintiff's hostile environment sexual harassment claim lacking, which is substantially better supported than her race claim. The record is devoid of any pervasive or severe discrimination against whites to warrant further discussion.

There is simply no dispute as to any material fact relevant to both of plaintiff's hostile environment claims, and no reasonable juror could find for

_____

[12] The court finds the Eleventh Circuit's survey of federal case law in Mendoza (see 195 F.3d at 1246-47) instructive.  In Mendoza, Judge Hull, writing for an en banc court, surveyed hostile environment case law from across the circuits and concluded, as this court concludes, "[m]any decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious or more serious than the conduct at issue in this [case]."

plaintiff on either of these two claims.  Thus, defendant is entitled to summary

judgment as to both hostile environment claims.

### 2.  Disparate Treatment

Plaintiff also alleges that (1) the lack of private shower facilities or

bathrooms for females at the police department and (2) the decision not to promote

her to sergeant independently creates a federal cause of action.  Again, these two

claims will be treated separately, but the following general principles apply to both

claims.

In general, a plaintiff may attempt to establish a claim of illegal employment

discrimination through the use of direct evidence, circumstantial (indirect)

evidence, or statistics.  See Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir.

1999).  Here, plaintiff has presented only circumstantial evidence of sexual and

racial discrimination.[13]  "In evaluating claims supported by circumstantial

evidence, [the court] use[s] the now-familiar framework established by the United

States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.

Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs

---

[13]  The statements alleged by plaintiff are examples of "stray remarks," unconnected with
the decision making process, which do not rise to the level of direct evidence.  Plaintiff is relying
on circumstantial evidence to prove her case.  (See Pl.'s Opp. Brief. Summ. J. at 35.)

v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106

F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, plaintiff

first has the burden of establishing a prima facie case of discrimination, which

creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-

28.  In general, a plaintiff establishes a prima facie case of disparate treatment

employment discrimination by showing that he or she was a qualified member of a

protected class and was subjected to an adverse employment action but that

otherwise similarly situated employees outside the plaintiff's class were treated

dissimilarly.[14]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v.

Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline).

Once the plaintiff has shown a prima facie case and, thereby, has raised the

presumption of discrimination, the burden of production shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its actions.  See Combs, 106

F.3d at 1528.  The employer "need not persuade the court that it was actually

motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see also

Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating

one or more such reasons, then the presumption of discrimination falls and the

---

[14] See also McDonnell Douglas, 411 U.S. at 802 n.13 (observing that "[t]he facts
necessary will vary in Title VII cases, and the specification above of the prima facie proof
required from respondent is not applicable in every respect in different factual situations").

20

burden of production again shifts to plaintiff to offer evidence sufficient for a
reasonable jury to conclude that the employer's supposedly legitimate reason is
merely a pretext for illegal discrimination.[15]  Although the <u>prima</u> <u>facie</u> case is
irrelevant once the employer has offered a legitimate reason for its actions, the
evidence of pretext may include the same evidence offered to establish the <u>prima</u>
<u>facie</u> case.  <u>See</u> <u>Combs</u>, 106 F.3d at 1528.

Despite the burden of production shifting between plaintiff and defendant
under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he ultimate burden of
persuading the trier of fact that the defendant intentionally discriminated against
the plaintiff remains at all times with the plaintiff."  <u>Burdine</u>, 450 U.S. at. 253.
Given that the ultimate burden of persuasion always lies with the employee, a
plaintiff may defeat summary judgment either by proving that intentional
discrimination motivated defendant or by producing sufficient evidence to allow a
rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus
permitting but not compelling the trier of fact to make a finding of illegal
discrimination.  <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133,
146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of

---

[15] If the proffered reason is one that might motivate a reasonable employer, a plaintiff
cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that
reason is not sufficient.  <u>Chapman</u>, 229 F.3d at 1030.

evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's <u>prima facie</u> case, whether the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[16] <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993); <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 (11th Cir. 2000); <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1336 (11th Cir. 2000); <u>Combs</u>, 106 F.3d at 1529-38 (interpreting <u>Hicks</u> and the post-<u>Hicks</u> case law); <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 920-21 (11th Cir. 1993).

### a. Promotion

In 2000, plaintiff first sought promotion to sergeant.  The selection process began when each potential candidate took the sergeant exam.  Plaintiff passed the exam, which was made known to the department when the Jefferson County Personnel Board certified a list of individuals eligible for promotion to sergeant. The list did not indicate exam scores.  (<u>See</u> Bellanca Depo. at 56-57.)  At least

---

[16] The court in <u>Chapman</u> modified the statement in <u>Combs</u> contrary to this holding in <u>Reeves</u> after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  <u>See Chapman</u>, 229 F.3d at 1025, n.11.

thirteen eligible individuals were interviewed for five available positions.[17]
Plaintiff interviewed with Captain Bellanca and Chief Brown for a sergeant
position and during her hour-long interview Captain Bellanca asked plaintiff "if
you don't get promoted, are you going to sue us?"  (See Pearson Depo. at 147, 176,
180.)[18]  Plaintiff responded that "I hope I don't have to."  (See id. at 176.)  After
the interviews, a "round table" evaluation was conducted among several
supervisors, including all the lieutenants, one or two captains and most of the
sergeants at the Bessemer Civic Center.  (See Easterling Depo. at 18-19.)  At the
meeting each participant submitted a list to Chief Brown of five names that they
considered to be the best candidates for promotion.  When the selecting officers
participating in the discussion addressed plaintiff's candidacy, they discussed
"qualifications, seniority, ... personality or ability to get along and supervise
others, temperament and ... one suspension in her background over some kind of
confrontation with [Lieutenant Thompson]."  (See id. at 22-23.)  Chief Brown then
deliberated based on the input gathered from the meeting and made the final

---

[17]  There were two females eligible for promotion.  (See Easterling Depo. at 22; Personnel
Board of Jefferson County Certificate of Eligibles dated May 7, 2001.)

[18]  Captain Bellanca recalls asking "what will your response be if you don't get this
promotion?"  (See Bellanca Depo. at 57-58.)  Bellanca testified that this question was asked in
order to evaluate if the employee would continue to work hard in their current position if they
were not promoted.  (See id.)

recommendation to the mayor.

On or about May 31, 2001, three white males and two black males were promoted to sergeant. Shortly thereafter, plaintiff was transferred to the motor scouts unit and a black female, subject to the committee process, was retroactively promoted to sergeant despite not having previous patrol experience. Plaintiff subsequently re-took the sergeant examination. On December 11, 2004, plaintiff was promoted to sergeant and she is currently employed by defendant in that capacity. (See Johnson Aff. at ¶ 2.)

The court analyzes plaintiff's assertion that the decision not to promote her was unlawful using the McDonnell Douglas framework outlined above. It is rudimentary that Title VII prohibits an employer to refuse to promote any individual because of their race or sex. See Sledge v. Goodyear Dunlop Tires N. Am. Ltd., 275 F.3d 1014, 1018 (11th Cir. 2001) (race); Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000) (sex).[19] The court can assume that plaintiff will

---

[19] Plaintiff invoked 42 U.S.C. § 1983 in her complaint. No where does plaintiff indicate whether § 1983 was pled regarding gender on Equal Protection grounds or as a vehicle for alleging a § 1981 race violation against a municipality. The court has grounds to deem plaintiff's § 1983 claim abandoned since it was not mentioned in her opposition brief. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001); Wu v. Southeast-Atlantic Bev. Corp., 321 F.Supp.2d 1317, 1333 (N.D. Ga. 2004) (deeming claim abandoned where plaintiff failed to address claim in response to a motion for summary judgment). The court need not resolve the claim on this basis because the claim fails as a matter of law. See generally Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (the same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under

be able to meet her initial burden because she is a white female, qualified for the sergeant position, rejected despite her qualifications and the position was filled with a person outside plaintiff's protected class.  Based on that assumption, a presumption of illegal discrimination is created whereby the defendant must produce admissible evidence which, if believed by the trier of fact, would support the conclusion that the decision not to promote plaintiff was not the product of unlawful discrimination.

Defendant's brief states that the adverse employment action was taken because "[plaintiff] was not ready to be promoted at that time and that the other individuals were better candidates."  (See Def.'s Mem. Supp. Summ. J. at 38.) (citing Johnson's, Bellanca's and Easterling's depositions.)  The promotion decision was ultimately made by Chief Ron Brown and was based on the feedback elicited from the supervising officers at the discussion.  Evidence has been presented from three of the discussion's participants: Captain Johnson, Lieutenant Easterling and Captain Bellanca.  Johnson did not recommend to promote plaintiff because "the other candidates had a little bit more ["policing"] experience and had

_____

§ 1981).  The court parenthetically notes that if plaintiff has alleged a § 1981 based race claim, liability in this case must be established by using the Monell analysis used in § 1983 claims.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 691 (1978).

25

a little better attendance records." (See Johnson Depo. at 39-40.) Lieutenant Easterling stated that the discussion regarding plaintiff's promotion "mainly centered around .. qualifications, seniority, and ... personality of ability to get along and supervise others, temperament and that." (See Easterling Depo. at 22-23.) Captain Bellanca's analysis focused on plaintiff's experience. (See Bellanca Depo. at 77.) The gist of these non-discriminatory proffered reasons are that the other candidates were more qualified with respect to experience, seniority, attendance and subjective ability to supervise. Plaintiff must rebut defendant's proffered reason by showing that the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001) (internal citation and quotation marks omitted) (emphasis added). In Cofield, the Eleventh Circuit stated that "[t]he relevant inquiry for us, then, is not to judge which employee was more qualified, but to determine whether any disparity between [the comparator's] and [plaintiff's] managerial qualifications is so great that a reasonable fact-finder could infer that [the employer] did not believe [the comparator] to be better qualified." 267 F.3d at 1268. "Federal courts are not in the business of adjudging whether employment decisions are prudent or fair. Instead, the sole concern is whether unlawful discriminatory animus motivated a challenged employment decision." Damon v.

Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).

Defendant has articulated reasons for the decision and plaintiff argues that this cases meets the stringent standard to prove pretext.  The court will first address the promotion claim based on gender.  Plaintiff's claim hinges on creating a jury question whether there was great disparity between her qualifications and those of her similarly situated male counterparts.  The fact that plaintiff has not indicated which male she is comparing herself to is of little consequence as the court is comfortable that she has not presented substantial evidence to survive summary judgment if any of the males were her comparator.[20]  The only evidence plaintiff has come forward with to prove pretext is (1) that plaintiff performed better on the sergeant exam than three of the males promoted and (2) that she was never disciplined or warned about her attendance and was absent from work "very

---

[20]  In order to establish a prima facie case of disparate treatment, a plaintiff must show a comparator who is "similarly situated in all relevant aspects."  Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001).  For example, in the disciplinary context, "the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  Id. (citing Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (emphasis added).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff superficially mentions one male by name in her brief but appears to be mentioning him in connection with her race claim.  To the extent plaintiff cites him for purposes of gender discrimination, she argues that she had more experience than him.  This contention is discussed infra as it is the same argument made with respect to plaintiff's race comparator, Sherri Moultrie.

rarely."  Since no one from the City of Bessemer Police Department had the results of the exam during the selection process, the scores could not have been used to differentiate candidates.  Plaintiff's testimony regarding her own attendance likewise falls far short of proving pretext.  Plaintiff has not pointed to any evidence  suggesting that plaintiff's attendance record was as good as the other candidates or that Captain Bellanca did not honestly believe that to be the case. Not only does plaintiff's evidence not "jump off the page and slap you," it does not even facially rebut defendant's articulated reasons as to plaintiff's promotion claim based on gender discrimination.

Next, the court addresses the promotion claim based on racial discrimination.  Six individuals were promoted to sergeant during the promotion cycle in question, three were white and three were black.  Plaintiff compares herself to Sherri Moultrie (black female) and M.R. Brown (black male).[21]  Her argument with regard to both of these individuals is that she had more experience than them, and thus, defendant's assertion that plaintiff lacked the requisite experience is pretextual.  The undisputed evidence supports her contention that plaintiff has significantly more experience than Moultrie or Brown.  This weighs

---

[21]  Plaintiff also offers several examples of black officers not receiving discipline after violating department rules.  (See White Aff. at 3.) (long lunch breaks and making personal phone calls); (see also Perales Depo. at ¶ 6.) (bad language and receiving an off-duty DUI).

28

heavily in favor of plaintiff.  However, before jumping to the conclusion that a

jury issue exists the court must be mindful that where a defendant articulates

multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must

rebut each of defendant's proffered reasons.  Chapman, 229 F.3d at 1024-25.

Lieutenant Easterling stated that the discussion regarding plaintiff centered on

several attributes, including qualifications, ability to get along with and supervise

others and temperament.

Such subjective criteria are often vulnerable to attack, and although plaintiff

has not offered evidence to call the criteria into doubt, many courts have inferred

pretext from the record as a whole.  See generally Hill v. Seaboard Coast Line

R.R., 885 F.2d 804, 809 (11th Cir. 1989) (viewing the use of subjective criteria

with suspicion and stating that the trial court may properly assess whether such

criteria are bona fide); Rivero v. District of Columbia, 52 FEP 294, 296-97

(D.D.C. 1990) (finding that a negative evaluation of plaintiff's skills was

pretextual where the selecting employee did not know the personnel procedures

and had made derogatory statements regarding Hispanics).  A subjective reason is

a legally sufficient, legitimate, nondiscriminatory reason if the defendant

articulates a clear and reasonably specific factual basis upon which the employer

based its subjective opinion.  See Chapman, 229 F.3d at 1032.  The court will not

29

reexamine the department's business decisions because inquiry is limited to whether the employer gave an honest explanation of its behavior.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

A significant factor in such an inquiry is the nature of the job at issue.  See 1 LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 735 (3d ed. 1996); see also Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir.2001) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.") (internal quotation omitted) .  Courts have generally been more inclined to allow the use of subjective factors in promotions to upper-level positions or those requiring specialized abilities.  Id.; see also Moulds v. Wal-Mart Stores, Inc., 935 F.2d 252, 255 (11th Cir. 1991) (holding that a lack of a "sufficiently strong personality" for effective management is a legitimate subjective consideration); Nance v. Union Carbide Corp., 540 F.2d 718, 727 (4th Cir. 1976) (stating that the ability to work amicably with others is a valid consideration in selecting a supervisor); Baldwin v. BellSouth Adver. & Publ'g Corp., 677 F.Supp 1573, 1574-75 (M.D. Ga. 1988) (finding a decision to promote legitimate when based on impressions from a personal interview).  The sergeant position is supervisory in nature.  Moreover, it

is not hard to imagine that a unique personality and skill set is required to effectively manage and work with other police officers. "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII...." Millbrook v. IBP, Inc., 280 F.3d 1169, 1176 (7th Cir. 2002) (original citation omitted). The fact that two of the individuals present at the "round-table" discussion have made stray comments in the past about women[22] is not enough to allow a reasonable juror to imply that the subjective criteria was a "mask for discrimination." Although plaintiff's experience may have been a pretextual rationale, there is no evidence in the record to indicate that defendant's other articulated reasons were not honestly believed.

In short, in order to successfully oppose defendant's summary judgment motion, plaintiff must come forward with evidence sufficient for a reasonable jury to conclude that the challenged conduct or decisions were indeed motivated by intentional discrimination or that defendant's proffered legitimate reasons were merely a pretext for illegal discrimination. Assuming, without deciding, that plaintiff has established her prima facie case, undisputed evidence demonstrates that plaintiff has failed to rebut as pretext defendant's legitimate and

---

[22] The record is void of any derogatory comments regarding the plaintiff's race.

nondiscriminatory reason for the employment decision.  Thus, defendant is
entitled to summary judgment on both promotion claims.

### b.  Toilet and Shower Facilities

Plaintiff has also alleged disparate treatment relating to the toilet and
shower facilities.  This is essentially a working conditions claim that "falls within
Title VII's ban on discrimination in "terms, conditions, or privileges of
employment."  LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 15.01 (2005).
Specifically, plaintiff claims that the facilities provided to female officers are
unacceptable and defendant has not remedied the problems because of its
discriminatory animus towards females.

The Bessemer Police Department did not provide a separate locker/shower
room facility for women.  The department is located in a building constructed
during the 1960's when only males were members of the police force.  (See
Johnson Aff. at ¶ 3.)  Female officers either had to share the male facilities, use the
public restroom or knock on the warden's door and use a small restroom off the
warden's office.  Complaints were made known to the department, and in response,
the department constructed a wall with a locking door between the toilet area and
the shower/locker area.  (See Johnson Aff. at ¶ 3.)  Also relevant to this claim,
during plaintiff's employment Captain Johnson made several negative references

to plaintiff's body odor and after complaints about the facilities were made he said, "[s]he wants a shower room and all this.  My God, we'll buy the soap and give her a towel, anything she needs, if she would just take a bath."  (See Cartier Depo. at 43-45, 48.)  The department has performed work on the shower/locker area on two occasions and the current configuration includes plywood dividers that precludes the possibility of employees climbing on the lockers and looking into the locker room.  (See id. at ¶ 3-5.)  Also, another door was installed to the locker rooms, separating the men's and women's locker rooms.  (See id.)  The restroom facility is unisex and is equipped with a door lock which can be locked from the inside.  (See id. at ¶ 6.)

The configuration that existed at the time of the EEOC charge, and/or 180 days before the charge, is the arrangement relevant to plaintiff's cause of action. Plaintiff's charge of discrimination stated in pertinent part:

> Since my employment with the Bessemer Police Department, female officers have not had separate locker rooms.  Female officers either had to share the male locker room with male officers, use the public restroom knock on the wood in the door and use a small restroom off the warden's office.  After a female officer complained to the Bessemer Police Department about the need for separate locker rooms with shower and changing facilities for female officers, a wall with a locking door was put up between the toilet/urinal area and the existing changing/shower/locker area.  However, to enter and/or exit either area you must pass through the changing/shower/locker area.  I feel that the Bessemer Police Department is and has been discriminating against me

33

> because of my sex (female) by failing to provide a separate restroom and
> locker room for showering and changing as is provided male officers.

(Plaintiff's EEOC Charge of October 10, 2001.)  Plaintiff complains that males or

females could easily walk in on officers of the opposite sex taking a shower or

using the restroom.  Although plaintiff has cryptically presented this claim by

failing to cite any legal authority to aid the court's understanding of her

arguments, plaintiff is essentially litigating (1) the lack of a separate and private

shower facility and (2) the lack of a separate and private restroom.  (See Pl.'s Opp.

Mem. Summ. J. at 18-20.)

The central inquiry, under the disparate treatment theory which plaintiff is

asserting, is "whether the circumstantial evidence presented is sufficient to create

an inference ... that a basis for an employment-related decision was an illegal

criterion."  Note, Facility Hostility? Sex Discrimination and Women's Restrooms

in the Workplace, 36 GA. L. REV. 599, 609 (2002) (citing Fitzpatrick, 2 F.3d at

1123).  The Seventh Circuit was confronted with a related issue when an electric

company did not provide any restrooms on a job site, leaving their employees to

relieve themselves in an adjacent wooded area.  DeClue v. Cent. Ill. Light Co., 223

F.3d 434 (7th Cir. 2000) (Posner, J.).  The plaintiff in DeClue sued the electric

company using a hostile environment theory when it did not respond to requests to

34

provide civilized bathroom facilities.  223 F.3d at 436.  The court held that

although a "reasonable person could think an absence of bathroom facilities [could

be] an intolerable working condition," it cannot be a form of sexual harassment.

Id.; see also Kline v. Kansas v. City Fire Dep't, 175 F.3d 660, 664 (8th Cir. 1999)

(holding in the hostile environment context that the exclusion of evidence that

there was not shower facility for female employees and no privacy was provided

in the bunk area was harmless).  Although DeClue is distinguishable from the case

at bar for several reasons, the upshot is that subjecting men and women to the

same terms and conditions (i.e. bathrooms and showers) is not intentional gender

discrimination.  Plaintiff has not presented evidence showing that the males in the

Bessemer Police Department were afforded any extra or different treatment

regarding the facilities.[23]

Although not binding precedent, the court also finds two Six Circuit

decisions insightful.  First, in Hulbert v. Memphis Fire Department, a female fire

fighter was subjected to disparate treatment when she was not allowed to "ride out

of rank" (temporarily act as a supervisor) because the fire station did not have any

shower facilities for women.  221 F.3d 1334, at *4 (6th Cir. 2000) (unpublished

_____

[23]  An argument exists that the facilities have a disparate impact on females.  The court
will not comment on whether such a claim would survive summary judgment since plaintiff has
not presented such a claim to the court in its pleadings or brief.

opinion).  The court held that this unrebutted evidence established a <u>prima</u> <u>facie</u> case based on direct discrimination.  <u>Hulbert</u>, 221 F.3d at *4.  The absence of showers for females denied plaintiff the promotion opportunity that was associated with riding out of rank.  <u>Id.</u>  The second case worth mentioning is <u>Harrington v.</u> <u>Vandalia-Butler Board of Education</u>, where a female gym teacher sued because the male gym teachers had better and more private toilet, shower and locker room facilities.  585 F.2d 192, 192-194 (6th Cir. 1978).  The court found that private restrooms were a "privilege" within the purview of Title VII, hence, denying females a privilege given to men violated Title VII.  <u>Harrington</u>, 585 F.2d at 194 n.3.  The court briefly mentioned discriminatory intent, stating "[t]he intentionally discriminatory nature of the disparity was shown by evidence that when a male teacher was assigned to teach girls physical education, he was assigned to the larger gymnasium and was not required to move his offices or to work in the girls' gym."  <u>Id.</u> at 194.

The court is not naive or disrespectful to the fact that women "[w]omen want and need privacy from members of the opposite sex when they use the restroom, and to deprive them of that can cause anxiety and distress."  Note, <u>supra</u>, at 611.  However, this case is distinguishable from the above cases because it does not involve a situation of unequal facilities or one where no restrooms were

provided.  Instead, this case involves facilities equally accessible to men and women.  Undisputed testimony shows that an officer of either gender could use the restroom or shower.  Currently, they can enter the respective rooms and lock the door to ensure their privacy.  Also, although and the restroom stalls were, and are still, not the model of privacy, both men and women are equally subject to the facility's shortcomings.  There is no evidence, direct or circumstantial, that defendant's policy regarding the facilities was motivated in any way by a discriminatory animus towards plaintiff or females in general.[24]  Plaintiff's disparate treatment argument regarding the restroom, shower and locker facilities cannot prevail because there is no genuine issue of fact whether defendant purposefully intended to discriminate.  Therefore, defendant is entitled to summary judgment in its favor as to all of plaintiff's disparate treatment claims predicated upon the toilet and shower facilities.

## IV.  Conclusion

For the reasons set forth above, the court finds that no material issues of fact

---

[24]  Since plaintiff's complaint invokes 42 U.S.C. § 1983, defendant has addressed plaintiff's facilities claim under the Equal Protection Clause of the United States Constitution.  A public employee has a constitutional right to be free from unlawful sex discrimination.  See Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation, 49 F.3d 1490 (11th Cir. 1995).  To prevail on a  § 1983 Equal Protection claim, a plaintiff is required to prove that she was subject to purposeful discrimination because of her sex.  Cross, 49 F.3d at 1507.  The record does not support the contention that defendant has purposefully discriminated against women with regard to the facilities.

remain and that defendant City of Bessemer is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  Plaintiff has not provided evidence which a reasonable jury could use to find the existence of severe or pervasive harassment sufficient to alter the conditions of her employment and create a hostile working environment.  Plaintiff's promotion claim fails because she is unable to demonstrate that defendant's non-discriminatory articulated reasons are pretextual.  Finally, plaintiff's claim based on the facilities fails as there is no evidence of intentional discrimination in the terms and conditions of her employment.

A separate order will be entered this day.

**DONE** this the ___3rd___ day of May, 2005.

SENIOR UNITED STATES DISTRICT JUDGE